GAZENA C. JONES, Respondent, *v.* IDA V. FLEMING et al., Appellants.

In an action to recover dower it appeared that plaintiff, during the lifetime of her husband, who had been declared a lunatic, and a committee of his estate appointed, entered into a contract with the committee and the children of her husband, and executed to them a deed, by which, in consideration of the receipt by her of about one-third of her husband's property, she released all interest in his estate, including "her inchoate right of dower (if any exists), of, in and to any and all real estate," and also covenanted at any future time, on demand, to execute all necessary deeds, releases or tranfers, to carry out the intention of the parties, "namely, the full and perfect release" of her "inchoate and other rights in the property" of her husband, which she had or might have at the time of the death, and she also covenanted not to make any claim therefor on the death of her husband *Held,* that plaintiff was not entitled to dower ; that there was under the agreement and within the meaning of the Revised Statutes (1 R. S. 741, §§ 12, 13, 14), a pecuniary provision made in lieu of dower; and, as plaintiff had retained that provision and never offered to return it. she must be deemed to have elected to keep it in lieu of dower.

Also *held,* that while the agreement and deed did not operate as a present release of her inchoate right of dower, as under the agreement she received a separate estate, it was obligatory upon her, and she was bound to release her dower ; that it was immaterial that defendants did not then own the land in which dower is claimed; that they were competent to make a contract for the benefit of the land when their interest should come into existence.

*Jones* v. *Fleming* (37 Hun, 227) reversed.

(Argued January 26, 1887 ; decided March 1, 1887.)

APPEAL from judgment of the General Term of the Supreme Court in the fourth judicial department, entered upon an order made November 10, 1885, which affirmed a judgment in favor of plaintiff, entered upon the report of a referee. (Reported below 37 Hun, 227 )

The nature of the action and the material facts are stated in the opinion.

*Denis O'Brien* for appellants. The plaintiff was not entitled to recover dower in this action. (*Payne* v *Becker*, 87 N. Y. 157 , Gerard's Titles, 157 , 3 N. Y R S [7th ed.] 2197, § 1 ;

*Cropsey* v. *Ogden*, 11 N. Y. 228; *Amory* v. *Amory*, 6 Robt. 514; *Smith* v. *Woodworth*, 44 Barb. 198.) The plaintiff's marriage to Jones would have been void at common law, and also under our statutes prior to the Revised Statutes of 1829. (1 Black's Com. 436; 2 Kent's Com. 80; *Williamson* v. *Parisien*, 1 Johns. Ch. 389.) The only effect of chapter 24, Laws of 1788 (1 R. L. 113), was to relieve the wife from the penal consequences of bigamy. ( *Williamson* v. *Parisien*, 1 Johns. Ch. 389; *Jackson* v. *Claw*, 18 Johns. 346; 1 Bishop on Divorce, § 299.) The plaintiff is not entitled to dower, unless the provisions of the Revised Statutes render her subsequent marriage valid, until sentence of nullity shall be passed for all purposes. This can only be done by distinct and positive legislation. (3 R. S [7th ed.] 2332, §§ 5, 6; 3 R. S [6th. ed.] 153, §§ 33, 36; Code Civ. Pro., §§ 1743, 1745; *Appleton* v. *Warner*, 51 Barb. 271; 3 N. Y. R. S. [6th ed.] 154, § 37; *Williamson* v. *Parisien*, 1 Johns. Ch. 389; 4 Bl. Com 163; *Jackson* v. *Claw*, 18 Johns. 346.) The fact that the marriage may be annulled by decree of the court does not give it any validity until decree is made. All the provisions read together result in the conclusion that nothing was intended further than to give the children limited succession to property, and to extend immunity from punishment. (*Spicer* v. *Spicer*, 16 Abb. Pr. [N. S.] 112.) As the widow of Firth, plaintiff, at his death, was entitled to dower in his estate, and this is so, notwithstanding she might not have obtained a divorce for his adultery. ( *Wait* v. *Wait*, 4 N. Y. 95; *Van Voorhis* v. *Brintnall*, 23 Hun, 263, 86 N. Y. 18; *Savage* v. *Crill*, 19 Hun, 4; *Schiffer* v. *Pruden*, 7 J. & S. 167, 174; *Pitts* v. *Pitts*, 52 N. Y. 593.) An inchoate right of dower is a subsisting and valuable interest possessing a pecuniary value which is susceptible of estimation. Although it is not complete or consummated until the death of the husband, it is, nevertheless, a present, certain and vested interest. (*Steele* v. *Ward*, 30 Hun, 555; *Simar* v. *Canaday*, 53 N. Y. 298; *Doty* v. *Baker*, 11 Hun, 222; *Garlock* v *Strong*, 3 Paige, 440; *Young* v. *Carter*, 1 Abb. [N. C ]

·136, note; *Pomeroy* v *Pomeroy*, 54 How. Pr. 228; *Witthaus* v. *Shack*, 24 id. 328; *Douglas* v. *Douglas*, 11 id. 406; *Babcock* v. *Babcock*, 53 How. Pr. 97, *Mathews* v. *Duryea*, 4 Keyes, 525; *Mills* v. *Van Voorhies*, 20 N. Y. 412; *Payne* v. *Becker*, 87 id. 153; *Pope* v. *Meade*, 99 id. 201; *Youngs* v. *Carter*, 10 Hun, 194, *Foster* v. *Foster*, 5 id. 557; *Strong* v. *Clem*, 12 Ind. 37, *Potter* v. *Everett*, 7 Ire. Eq. Cas. [N. C] 152; *Cornell* v. *Wilson*, 21 Ark 62; *Jackaway* v. *McGarrat*, id. 347.) It is not such a present interest before his death as is the subject of a conveyance, because it does not ripen into an estate until that event takes place. (*Marvin* v. *Smith*, 46 N. Y. 571, 575; *Hammond* v. *Pennock*, 61 id. 158; *Elmendorf* v. *Lockwood*, 57 id. 322, 325, 330, *Malloney* v. *Horan*, 49 id. 112, 119, *Merch. Bk.* v. *Thomson*, 55 id. 8; *Gilligan* v. *Swift*, 7 Week Dig 116; *Croach* v. *Ingraham*, 13 Pick. 23, *Thompkins* v. *Fonda*, 4 Paige, 448; *Savage* v. *Crill*, 19 Hun, 4; 80 N. Y 630; *Chicago D. Co.* v *McKinzie*, 49 Ill. 289, 294; 1 Wash. on Real Property [4th ed.] 307; *Harriman* v. *Gray*, 49 Me. 537; *Robinson* v. *Bates*, 3 Met. 40, *Pixley* v. *Bennett*, 11 Mass. 298; *Stover* v. *Eycleshimer*, 3 Keyes, 620; 46 Barb. 84, 2 Story's Eq. § 1040 *b*; *Field* v. *Mayor, etc.*, 6 N. Y. 179, *Johnson* v. *Williams*, 63 How Pr. 233; 2 Spencer's Eq. 852, 853, 854, 855; Fonblanque's Eq. 213; *Lawrence* v. *Bayard*, 7 Paige, 70; *Buckley* v. *Newland*, 2 P. Wms. 182; *Hobson* v. *Trevor*, id. 191; *Hyde* v. *White*, 5 Simons, 524; *Howard* v. *Took*, 2 id. 182; *Lyde* v. *Winn*, 1 M. & K. 683; 3 Pomeroy's Eq. § 1287; *Miller* v. *Emans*, 19 N. Y. 384.) The heirs of Jones were the interested parties, and as the transaction was between them and plaintiff the estoppel was mutual. (*Fitzgerald* v. *Quann*, 33 Hun, 655; Brown's Legal Maxims [5th ed.] 133 M. 118.) This action was properly brought in the name of Jones, by his committee, under the direction of the court. (3 R. S. [6th ed.] 449; Code Civ. Pro., §§ 449, 1745; Laws of 1845, chap. 112, § 2; *McKillip* v. *McKillip*, 8 Barb. 552; *Burnett* v. *Bookstaver*, 10 Hun, 481; *Lane* v. *Schermerhorn*, 1 Hill, 97; *Petrie* v. *Shoemaker*, 24 Wend. 85, *Field* v *Fowler*, 2

Hun, 400; *Perry* v. *Perry*, 2 Paige, 501; *Wightman* v. *Wightman*, 4 Johns. Ch. 343; *Ferlat* v. *Gojon*, 1 Hopk. 478; *Portsmouth* v. *Portsmouth*, 3 Eng. Ecc. 154 ; 1 Hagg. 335; *Parnell* v. *Parnell*, 2 id. [Consistory Rep.] 169; *Morrison* v. *Morrison*, Ct. of Arches, 1745; *Frost* v. *Bowerman*, id. Feb'y 22 [1790]; *Crump* v. *Morgan*, 3 Ir. [N. C.] Eq. 91; *Brown* v. *Westbrook*, 27 Ga. 102; *Mims* v *Mims*, 33 Ala. 98; Shelford on Lun. 448, 449, 456 ; 2 Bish. on Mar. & Div. § 307; *Mordaunt* v. *Mordaunt*, 2 L. R. [P. & D.] 109; *Hancock* v. *Peaty*, 1 L. R. 335 ; *Appleton* v. *Warner*, 51 Barb. 270; *Savage* v. *Crill*, 19 Hun, 4, 80 N. Y. 630.) If the release of dower executed by plaintiff was not effective, as such, she was estopped by her covenants from claiming dower. (*Miller* v. *Emans*, 19 N. Y. 385, 390 ; *Moore* v. *Littel*, 41 id. 66 ; *Sedgwick* v. *Stanton*, 14 id. 289 ; *Durgin* v. *Ireland*, id. 322; *Zogbaum* v *Parker*, 66 Barb. 341, 344; *Fowler* v. *Callan*, 4 Civ. Pro. Rep. 413; *Sparrow* v. *Kingman*, 1 N. Y. 246, 247; *Esterbrook* v *Savage*, 21 Hun, 153; *Jackson* v. *Murray*, 12 Johns. 202; *Jackson* v. *Bull*, 1 Johns. Cas. 81; *Teft* v. *Munson*, 57 N Y. 97; *House* v. *McCormick*, 57 id. 311; *Pelletrau* v. *Jackson*, 11 Wend. 120, 121; *Stover* v. *Eycleshimer*, 3 Keyes, 620 ; 46 Barb. 84 , *Austin* v *Ahearn*, 61 N. Y. 7.; *Jackson* v. *Van Derheyden*, 17 Johns. 167; *Marvin* v *Smith*, 46 N. Y. 574, 575; *Anderson* v. *Mather*, 44 id. 250 ; *Bodine* v. *Killeen*, 53 id. 93; *Penn. Coal Co.* v. *Blake*, 85 id. 227; *Duigens* v. *Clancy*, 67 Barb. 566; *Treman* v. *Allen*, 15 Hun, 550; *S. C.* 84 N. Y. 354; *Hensler* v. *Sefrin*, 19 Hun, 564; *Whyton* v. *Snyder*, 88 N. Y. 299; *Cashman* v *Henry*, 75 id. 103; *Tiemeyer* v. *Turnquist*, 85 id. 516; *Harrington* v. *Robertson*, 71 id. 280; *Ackley* v. *Westervelt*, 86 id 448; Bigelow on Estoppel [2d ed.] 387; *Cox* v. *James*, 45 N. Y. 558; *Cook* v. *Holt*, 48 id. 275 ; *Vosburg* v. *Huntington*, 15 Abb. Pr. 254; *Jackson* v. *Hotchkiss*, 6 Cowen, 401; *Jackson* v *Spear*, 7 Wend. 401; *Marie* v. *Garrison*, 13 Abb. [N. C.] 210, 309; Hermons Law of Estoppel, § 338; *McMicken* v. *Perrie*, 18 U S. 507.) Post-nuptial agreements between husband and wife, though void at law, will be enforced in

equity. (*Foster* v. *Foster*, 5 Hun, 557 ; *Shepard* v. *Shepard*, 7 John, Ch. 57 ; 2 Story's Eq., §§ 1368, 1372 ; *Mahon* v. *Smith*, 60 How. Pr. 385 ; *Syracuse Plow Co.* v. *Wing*, 20 Hun, 206 ; S. C. 85 N. Y. 421 ; *Calkins* v. *Long*, 22 Barb. 97 ; *Wallace* v. *Bassett*, 41 id. 92 ; *Magee* v. *Magee*, 67 id. 487 ; *Allen* v. *Offerell*, 64 How. Pr. 380 ; *Carson* v. *Murray*, 3 Paige, 483 ; *Reed* v. *Gannon*, 50 N. Y. 345 ; *Dupre* v. *Rein*, 7 Abb [N C.] 256 ; *Desbrough* v. *Desbrough*, 29 Hun, 593 ; *Baker* v. *Barney*, 8 Johns. 72 ; *Shelthar* v. *Gregory*, 2 Wend. 422 ; *Mercein* v. *People*, 25 id. 100 ; *Allen* v. *Affleck*, 64 How. Pr 380 ; *Thomas* v. *Brown*, 10 Ohio St. 247 ; *Garlick* v. *Strong*, 3 Paige, 440 ; *Evans* v. *Evans*, 3 Yeates [Penn.] 507 ; *Campbell* v. *Hammett*, 2 Week. Dig. 204 ; *Day* v. *West*, 2 Edw. Ch. 594 ; *Townsend* v. *Townsend*, 2 Sand. 713, 714 ; *Livingston* v. *Livingston*, 2 Johns. Ch. 537 ; *Carson* v. *Murray*, 3 Paige, 483.) If an agreement to release dower is fairly made and acted upon, equity will treat it as valid, or hold the party asserting the right estopped, for the purpose of preventing injustice. (*Dunlap* v. *Thomas*, 28 N. W. Rep. 637 ; *Nelson* v. *Holly*, 50 Ala. 3 ; *Johnson* v. *Montgomery*, 51 Ill. 185 , *Farron* v. *Farron*, 1 Del Ch. 457 ; *Yancey* v. *Smith*, 2 Metc. [Ky.] 408 ; *Grant* v. *Parkham*, 15 Vt. 649 ; *Simpson's App.*, 8 Penn. St. 199.) The transaction was, in effect, an agreement to sell and transfer to the defendants when they should become the owners of the property, any right of dower that the plaintiff should then have in the property as such, it was a valid contract and may be enforced against the plaintiff. (*Cashman* v. *Henry*, 75 N. Y. 103 ; *Crisfield* v. *Banks*, 24 Hun, 159 ; *Tiemeyer* v. *Turnquist*, 85 N. Y. 516 ; *Martin* v. *Roberts*, 30 Hun, 255 ; *Williamson* v. *Duffy*, 19 id. 312 , *Harrington* v. *Robertson*, 71 N. Y. 280 ; *Speck* v. *Gurnee*, 25 Hun, 644 ; *Prevot* v. *Lawrence*, 51 N. Y. 219 ; *Ackley* v. *Westervelt*, 86 id. 448 ; *Sar. Co. Bk.* v. *Pruyn*, 90 id. 250 ; *Whiton* v. *Snyder*, 88 id. 299 ; *Muller* v. *Platt*, 31 Hun, 121 ; *Vrooman* v. *Turner*, 8 id. 78 ; *Willsey* v. *Hutchins*, 10 id. 502 ; *Scott* v. *Otis*, 25 id. 33 ; *Anderson* v. *Mather*, 44

N. Y. 250; *Bodine* v. *Killeen*, 53 id. 93; *Harrington* v. *Robertson*, 71 id. 280; *Payne* v. *Becker*, 87 id. 153; *Pope* v. *Mead*, 99 id. 201; *Strong* v. *Clem*, 12 Ind. 39; *Potter* v. *Everett*, 7 Ire. Eq. Cas. [N. C.] 152; *Cornell* v. *Wilson*, 21 Ark. 62; *Jackaway* v. *McGarratt*, id. 347; *Stover* v. *Eycleshimer*, 3 Keyes, 620; *S. C.*, 46 Barb. 84; 2 Story's Eq. § 1040 *b*; Fonblanque's Eq. 213; 3 Pomeroy's Eq. § 1287; 2 Spence's Eq. 852. 853, 854, 865; *Lawrence* v. *Bayard*, 7 Paige 70; *Field* v. *Mayor, etc.*, 6 N. Y. 179; *Johnson* v. *Williams*, 63 How. Pr. 233; *Miller* v. *Emans*, 19 N. Y. 384; 4 Kent's Com. 261; 3 R. S. [7th Ed.] 2175, 2176, 2178, §§ 9, 10, 11, 13, 35; *Freeman* v. *Freeman*, 43 N Y. 34; *Favill* v. *Roberts*, 50 id. 222; *Crary* v. *Smith*, 2 id 60; *Parsell* v. *Stryker*, 41 id. 480; *Sherman* v. *Scott*, 27 Hun, 331; *Bennett* v. *Abrams*, 41 Barb. 619; *Williston* v *Williston*, id. 635; *Viany* v. *Ferran*, 54 id. 530, *McClasky* v *Mayor, etc.* 64 id. 310; *Johnson* v. *Brooks*, 93 N Y 337; *Post* v. *Bernheimer*, 31 Hun, 248; *Countryman* v *Deck*, 13 Abb. [N. C.] 110; *Brown* v. *Haff*, 5 Paige, 235; *Losee* v. *Morey*, 57 Barb. 561; *Schroeppel* v. *Hoffer*, 40 id. 425; *Wheeler* v. *Reynolds*, 66 N. Y. 227; *Miller* v. *Ball*, 64 id. 286; *Benedict* v. *Phelps*, 2 W'ky Dig. 150.) Under the circumstances of this case the marriage between plaintiff and Jones was, at best, voidable at the election of either party, and what was done amounted to such election. (1 Bishop on Mar. and Div. 299, §§ 6-9; *Clayton* v. *Wardell*, 4 N. Y. 238; 3 R. S. [7th ed.] 2331, § 1; *Amory* v. *Amory*, 6 Robt. 515; *Lincoln* v. *Lincoln*, id. 525; *Crepsey* v. *Ogden*, 11 N. Y. 228; *Patterson* v. *Gaines*, 6 How. [U. S.] 550; *Smith* v. *Woodworth*, 44 Barb. 198; *Appleton* v. *Warner*, 51 id. 270.) A person seeking to rescind a contract must restore what has been received under it. (*Cobb* v. *Hatfield*, 46 N. Y. 533; *Gould* v. *Cayuga Co. Bk.*, 86 id. 75; *Dodge* v. *Fearey*, 19 Hun, 277; *Sinclair* v. *Neill*, 1 id. 80; *Baker* v. *Lever*, 5 id. 114; *Farrell* v. *Corbett*, 4 id. 128; *Dows* v. *Griswold*, id. 550; *Masson* v. *Bovet*, 1 Den. 69; *Allen* v. *Affleck*, 64 How. Pr. 380; *King* v. *Brown*, 2

Hill, 485 ; *Lockwood* v. *Barnes*, 3 id. 128 ; *Nones* v. *Homer*, 2 Hilt. 116.)   A set-off will always be decreed in equity when necessary for the purpose of preventing injustice.   (*Jordan* v. *Nat. S. & L Bk.*, 74 N. Y. 467, 473, 476 ; *Coffin* v. *McLean*, 80 id. 560, 564 ; *Smith* v. *Fulton*, 43 id. 419 ; *Stillwell* v. *Carpenter*, 2 Abb. [N C.], 242, 269 ; *Davidson* v. *Alfaro*, 80 N. Y. 660 ; *Hatch* v. *Mayor, etc.*, 82 id. 436, 442 ; *Gay* v. *Gay*, 10 Paige, 370 ; *Sutphen* v. *Fowler*, 9 id. 280 ; *Bathgate* v. *Haskins*, 59 N. Y. 533 ; *Lindsay* v. *Jackson*, 2 Paige, 581.)

*Elon R. Brown* for respondent.   The plaintiff in this case is within the provisions of the statute relating to marriage during the absence of a living husband or wife, and the status thus acquired endows her in the lands of her second husband.   (3 R. S. [7th ed.] 2332, § 6 ; *Cropsey McKinney*, 30 Barb. 47 ; *Griffin* v. *Banks*, 24 How, 215 ; 37 N. Y., 621 ; *McCarter* v. *Camel*, 1 Barb. Ch. 463 ; *Sheldon* v. *Ferris*, 45 id. 124 ; *McComb* v. *Wright*, 5 Johns. Ch. 264 ; *Vallean* v. *Vallean*, 6 Paige, 207 ; *Eagle* v. *Emmett*, 4 Brad. 117, 121 ; *Jackson* v. *Boneham*, 15 Johns. 226 ; *King* v. *Paddock*, 18 id. 141 ; *Jones* v. *Zoller*, 29 Hun, 551 ; 32 id. 280.)   The contract of marriage, if made in good faith under the circumstances specified in the statute, carries dower as an incident of such marriage.   (*Price* v. *Price*, 33 Hun, 76 ; 1 Bish. Mar. and Div., § 114 ; 4 Kent's Com. 36, and notes ; 1 Greenl. Cruise, 155 ; 1 Hilliard [4th ed.] 138, § 7.)   The release of the plaintiff's inchoate right of dower during the lifetime of her husband does not operate as a bar to her recovery in this action.   (*Maloney* v. *Horan*, 49 N. Y., 111, 113 ; *Elmendorf* v. *Lockwood*, 57 id. 325 ; *Mason* v. *Mason*, 1 N. E. Rep'r, 106 ; *S. C.*, 21 Cent. L. J. 521 ; *Guidet* v. *Brown*, 54 How. Pr. 409 ; *Townsend* v. *Townsend*, 2 Sand. S. Ct. 711 ; *Day* v. *West*, 2 Edw. Ch. 592 ; *Carson* v. *Murray*, 3 Paige, 483, 503 ; *Crain* v. *Cavanna*, 36 Barb. 410 ; *Marvin* v. *Smith*, 46 N. Y. 571, 574, 575 ; *Innis* v. *Pendleton*, 22 Alb. L. J. 363 ; *Mason* v. *Mason, supra*.)   A married woman cannot bind

herself or her heirs by estoppel arising upon a deed or upon matter in "*pais*." (*Mason* v. *Mason, supra*; *Dominick* v. *Michael*, 4 Sand. Sup. Ct. 423; *Mason* v. *Jordan*, 23 Alb. L. J. 579; *Douglas* v. *Cruger*, 80 N. Y. 15, 20; Bigelow on Estoppel, 245; *Jackson* v. *Vanderheyden*, 17 Johns. 167; *Underhill* v. *Jackson*, 1 Barb. 73; *Pelletreau* v. *Jackson*, 11 Wend. 111-119; *Bartle's Petition*, 20 Am. L. Reg. 98.)

EARL, J.  The plaintiff commenced this action to recover dower in certain lands mentioned in the complaint, as the widow of James Jones, deceased, against his children and heirs-at-law.  The defendants interposed, as a defense to the action, that at the time of plaintiff's marriage with Jones, she had another husband living, and also that she had released, and agreed to release, any dower right. which she had in the lands.

Upon the trial, before the referee appointed to hear and determine the action, it appeared that the plaintiff was married to one Firth in 1855; that she lived with him as her husband until 1861, when they broke up housekeeping and never thereafter lived together; that in October, 1875, claiming that Firth had absented himself from her for more than five successive years, without being known to her to be living during all that time, she married Jones, and that he died on the 28th day of October, 1880, seized of the lands in which she claims dower.

The defendants gave evidence, tending to show that Firth had not absented himself within the meaning of the statute (3 R. S. [7th ed.] 2332, § 6), for five successive years, and claimed that her marriage with Jones was therefore null and void.  They also offered to prove certain proceedings instituted in the Supreme Court in 1877, for the purpose of having Jones declared a lunatic, and for the appointment of a committee of his person and estate.  The records of those proceedings show that the jury summoned for that purpose, found him to be a lunatic since the 15th day of June, 1877, and incapable of the government of himself and the manage-

ment of his estate; that there was a final order entered February 9, 1878, confirming the inquisition of the jury, and appointing William H. Miller committee of the person and estate of Jones, and that the committee qualified by giving the requisite bond. Those records were objected to by the plaintiff's counsel, as incompetent and immaterial, and were excluded by the referee. The defendants also offered in evidence a petition dated February 15, 1878, by Miller, the committee, addressed to the Supreme Court, which alleged, among other things, that while Jones was a lunatic, he was induced by the plaintiff to deliver to her bonds, notes and other choses in action, amounting in the aggregate to $9,000; that she afterwards transferred and delivered some portions of the property to divers other persons, and that she had delivered between $500 and $1,000 of such property to one Leavitt, who then held the same, and prayed for an order authorizing him to commence an action against the plaintiff to annul her marriage with Jones, and also actions against her and Leavitt and other persons, who might have any of the personal property of Jones in their possession, to recover the same. They also offered in evidence an order of the Supreme Court, made February 25, 1878, authorizing the commencement by the committee of the suits mentioned in the petition; a summons and complaint in an action wherein Jones, by his committee, was plaintiff and this plaintiff was defendant, to annul her marriage with Jones; the answer of the defendant in that action; a summons and complaint in the Supreme Court in an action by Jones by Miller as committee against the present plaintiff, commenced March 1, 1878, which complaint, among other things, alleged that Jones was the owner of personal property of the value of about $3,000; that his committee was entitled to the possession of the property, and that she declined to deliver the property to the committee and unlawfully detained the same from him, and demanded judgment for the recovery of the property; also the defendant's answer in that action, in which she admitted that she had possession

of the property, but alleged that it had been given to her by Jones, and that she was the owner thereof; also a summons and complaint in an action in the Supreme Court, by Miller, as committee of Jones against Leavitt, commenced March 15, 1878, which complaint alleged that Jones was the owner of personal property of the value of $500, which the committee was entitled to the possession of, and that Leavitt had converted the same, and demanded judgment for the value thereof; also the answer of Leavitt, which admitted that he had possession of the property, but alleged that the same had been delivered to him by Mrs. Jones, and that she was the owner thereof; also a summons and complaint in an action in the Supreme Court, by Miller, as committee of Jones against one Standring, commenced March 15, 1878, which complaint alleged that Jones was the owner of personal property of the value of about $4,000, which the committee was entitled to the possession of; that Standring had possession of the same and declined and refused to deliver the same to the committee, and it demanded judgment for the recovery of the property; and also the answer of Standring, in which he alleged that the property had been left with him by Mrs. Jones for safe-keeping, and that the same was owned by her. The plaintiff objected to all the evidence thus offered as incompetent and immaterial, and the referee sustained the objection.

The defendants then offered in evidence an agreement, dated January 28, 1880, between the plaintiff of the one part, and Ida V. Fleming, Ellen A. Van Ness and Julia E. Zoller, described as the only children and prospective heirs of James Jones, a lunatic, and William H. Miller, committee, of the other part, which recited and stated as follows : " That whereas four suits have been commenced and are now pending in the Supreme Court, brought by said committee against the party of the first part, Mrs. Jones, and against persons representing her claims as follows, to wit: (Here the suits above-mentioned are described), it having been this day agreed between the parties that all of the said actions be discontinued, and the

same having been discontinued, the said committee and said three daughters of James Jones have stipulated and agreed that of the property involved in said suits the sum of $3,400 shall be released to and is hereby delivered to said Gazena C. Jones, the receipt whereof is hereby confessed and acknowledged, and a general settlement being made this day between all the parties hereto, now, therefore, in consideration of the premises and of the said $3,400, duly paid to me, I hereby release, transfer, assign and set over to the said committee and said three daughters of said James Jones, all my right, title and interest, including my inchoate right of dower (if any such exists) of, in and to any and all real estate that said James Jones had on the 12th day of October, 1875, or that he has since acquired, and also of, in and to all his personal estate, and of, in and to any personal estate he may own at his death ; the intent being to release all right, inchoate or otherwise, that I have or may have in the estate of said James Jones ; and in consideration of the premises and of the said $3,400, hereby covenant and agree to and with said committee and the three daughters of said James Jones before named, that at any future time, on demand of the parties hereto, I will execute and deliver such further or other deeds, releases or transfers as may be necessary to perfect this arrangement and carry out the intention of the parties thereto, namely, the full and perfect release of all my inchoate or other rights in the property of said James Jones, and I hereby relinquish to said Miller, the committee, all rights that I now have as the committee of the person of said Jones, and agree to give full possession of the house and premises where I now am on Monday, February 2, 1880." This was signed by Mrs. Jones and acknowledged on the same day. The defendants also offered in evidence a quit-claim deed, dated and acknowledged on the same day, from plaintiff to the three children and to Miller, the committee, in which she released to them all her right, title and interest in and to all personal property of Jones, that came into her possession at any time prior to the date of the instrument,

except such articles as were brought to Jones' house by her, or bought with her own money, and she released, assigned and transferred to them, and their heirs and assigns, all the interest which she had, or might thereafter have, including any inchoate right of dower in any land to which Jones, had title, and she also released to the parties of the second part, any contingent interest in any personal estate which Jones might own at his death, and she covenanted with the parties of the second part not to make any claim therefor on the death of Jones, and that she would, in the future, on demand of any one interested, make such further deeds, conveyances or trans fers, as might be necessary to carry out the true intent and object of the parties, namely, to release all rights, inchoate or otherwise, which she had, or might have, in any property which Jones might have at the time of his death, and she acknowledged that the instrument was made as a part of the general settlement, which appeared by the agreement, bearing even date with the deed and signed by her; she also agreed to give up the possession of the house, on and before the Monday following, together with all the appurtenances thereto belonging. The defendants then offered in evidence a stipulation of the respective attorneys in the four actions mentioned in the agreement, discontinuing the same, without costs, as against each other, also dated January 28, 1878. The plaintiff objected to the agreement, the deed and stipulation as immaterial and incompetent, and the referee sustained the objection and excluded the evidence. The defendants then offered to prove that, after the time specified in the inquisition that Jones became a lunatic, the plaintiff wrongfully obtained from him over $7,000 worth of personal property, a portion of which she transferred to Standring and Leavitt; that an action was brought against her, in the name of Jones, by his committee, to set aside her marriage with Jones; that actions were also brought by the committee of Jones against her, Standring and Leavitt, to recover the personal property so obtained by her from Jones; that during the pendency of those actions a settlement was made between Miller, the committee of Jones,

and all of the children and prospective heirs of Jones, and the present plaintiff, whereby such actions were all discontinued, and Miller, as such committee of Jones, and the children and prospective heirs of Jones, paid to the plaintiff $3,400, which constituted upwards of one-third of the real and personal property of Jones; that the plaintiff, in consideration of the same, executed, and delivered the releases and agreements before offered in evidence, and delivered the custody of Jones to the committee, and thereafter never lived with him; that Jones never recovered, and died intestate, and that at the time the plaintiff obtained possession of the personal property he was, in fact, a lunatic. The plaintiff objected to this evidence, as immaterial and incompetent, and upon other grounds. The referee sustained the objection and excluded the evidence. The defendants then offered to prove that Julia E. Zoller, one of the original defendants, since deceased, after the settlement before mentioned, took charge of Jones, her father, and cared for and supported him until his death, on the faith of the settlement. This evidence was also objected to, and the objection was sustained by the referee.

In his report the referee found that the plaintiff's marriage with Jones was valid, and that she was entitled to dower in his estate, and judgment was entered in her favor upon such report, which, upon appeal to the General Term, was affirmed.

Whether the first husband of the plaintiff absented himself, without being known to her, for five successive years, within the meaning of the statute, and whether, assuming that he did so absent himself and the plaintiff was thus lawfully married to Jones, she became entitled to dower in his real estate, her first husband being alive at the time of Jones' death, we do not deem it important to determine, as there are other plain reasons which constrain us to hold that this most inequitable claim for dower should be defeated

It is provided in the Revised Statutes (3 R. S. [7th ed ] 2198, § 12) that, " if before her coverture, but without her assent, or if, after her coverture lands shall be given or

assured for the jointure of a wife, or a pecuniary provision
be made for her, in lieu of dower, she shall make her election
whether she will take such jointure or pecuniary provision,
or whether she will be endowed of the lands of her husband,
but she shall not be entitled to both."

We must assume that the facts which the defendants
offered to prove were true, and must dispose of the case upon
that basis. There was, therefore, within the meaning of this
section, a pecuniary provision of $3,400 for the plaintiff in
lieu of her dower. While it was not made by her husband, it
was made in his behalf by his committee and children. No
one has questioned that it was legally made, and while she
holds the property she cannot allege that it was not effectually
made. This section does not in terms relate to a provision
to take effect at the husband's death. Previous to the
married women's acts a pecuniary provision in lieu of dower
could, during coverture, be made for a wife through the
intervention of trustees to take effect during the life of the
husband or at his death. The property could be placed in
the hands of trustees, so that she could have the benefit and
enjoyment of it during coverture, or her enjoyment of it
could be postponed until after her husband's death; and in
either event, it cannot be doubted that the provision made
came within the purview of that statute. Since those acts,
the property constituting the provision under this section
may be transferred or secured to the wife as her separate
estate, and whether the possession and control of the property
be at once given to her, or be postponed until her husband's
death, it is still in every sense a provision within the meaning
of this section.

If by the word " provision " the law makers meant a suit-
able portion of the husband's estate, or a suitable provision
for the maintenance of the wife, or a provision to operate at
the husband's death, then all the three conditions are complied
with in this case. This provision was a suitable portion of
the husband's estate; the property was placed in the absolute
control of the wife, and hence could be used for her support

and maintenance, and must have been so intended ; and as it was given to her in the form of choses in action but a few months before her husband's death, it may be presumed that she had it at his death.

The two following sections of the Revised Statutes must also be noticed. Section 13 provides that " if land be devised to a woman or a pecuniary or other provision be made for her by will in lieu of her dower, she shall make her election whether she will take the lands so devised or the provision so made, or whether she will be endowed of the lands of her husband " Section 14 provides that " when a women shall be entitled to an election under either of the two last sections, she shall be deemed to have elected to take such jointure, devise or pecuniary provision, unless within one year after the death of her husband she shall enter on the lands to be assigned to her for her dower, or commence proceedings for the recovery or assignment thereof " Under these sections the widow may make her election at any time within one year, and if she does not elect to take her dower within one year, she will be deemed to have elected the provision made for her in lieu of dower. But she may elect to take the provision at any time, and when she has done so her right to dower is barred. Here the plaintiff kept the pecuniary provision made for her, has never offered to return it, still has it, and must therefore be deemed to have elected to take and keep it in lieu of dower. She cannot have both the provision and dower; and, therefore, when she began this action within less than two months after her husband's death, she had already made her election, and her right to dower was gone.

But there is still another reason for barring plaintiff's claim to dower. While under the decisions in this State, the agreement and deed of January 28, 1880, could not operate as a present release of plaintiff's inchoate right of dower, yet she was competent to enter into the agreement to execute a valid release of her dower after her husband's death. That agreement was based upon an adequate consideration. Three suits were pending which related to what she claimed to be her

separate estate, and they were settled and discontinued, and choses in action valued at $3,400, were transferred to and received by her as her separate estate. Her agreement was therefore one by which she received a separate estate, and related thereto, and therefore was binding upon her under the married women's acts, as has been frequently held in this and other courts of this State. (*Prevot* v. *Lawrence*, 51 N. Y. 219 ; *Herrington* v *Robertson*, 71 id. 280 ; *Cashman* v *Henry*, 75 id. 103 ; *Tiemeyer* v. *Turnquist*, 85 id. 516 ; *Ackley* v. *Westervelt*, 86 id. 448.) She received the choses in action in consideration of her agreement to release to these defendants her right of dower after the death of her husband, and her agreement was like the promise of a married woman to pay for property which she purchases for her own use, or adds to her separate estate. It is an immaterial circumstance that the defendants did not then own the land in which dower is now claimed or the property which was transferred to her. They expected to be interested in the land as the heirs of their father, and were perfectly competent to make a contract for the benefit of the land at a future time when their interest should actually come into existence. So, too, while they did not actually own the personal property, they were so situated that they were able to procure a settlement of the suits and the transfer of the property to her ; and so, even if the consideration was not at the time detrimental to them, it was beneficial to her, and ample to sustain her agreement based thereon. Certainly, so long as she retains the consideration which the defendants aided in securing to her, she cannot repudiate the agreement for which the consideration was furnished.

We know of no reason why such an agreement should not be enforced because it relates to dower then inchoate, but expected to be complete at the death of the husband when the agreement was to be performed. Such an agreement is condemned by no public policy. A married woman may bar her right to dower by a proper ante-nuptial or post-nuptial agreement, by accepting a provision made for her in a will, or by joining her husband in the conveyance of land in which

her right of dower is inchoate. It is the policy of the law that a wife shall not be deprived of her dower except by her own consent; but it leaves her absolute freedom in all the ways above-mentioned to bar her dower at her own will and pleasure.

The defendants in their answer, among other things, demanded for relief specific performance by the plaintiff of her agreement to release her dower, and if the evidence erroneously excluded by the referee had been received they would, if necessary for their protection, have been entitled to such relief.

Our conclusion, therefore, is that the judgment should be reversed and a new trial granted, costs to abide the event.

All concur.

Judgment reversed.