JOHN WANAMAKER, Appellant, *v.* SIMON J. WEAVER, Respondent.

*Husband and wife — measure of the liability of the husband for goods purchased by the wife — the wife may make herself liable — when the question as to which is liable should be submitted to the jury.*

The liability of a husband living with his wife to pay for necessaries purchased by the wife upon credit is not affected by the fact that, at the time such necessaries were purchased the wife was provided with a suitable allowance and that the family were well supplied with goods of like description purchased from other merchants.

McLENNAN and DAVY, JJ., dissented.

A wife living with her husband may, by agreement, make herself personally liable for necessaries purchased by her for the use of the family.

In an action to recover the purchase price of necessaries sold by the plaintiff to the defendant's wife, evidence was given to the effect that the defendant's wife called at the plaintiff's store stating that she desired to purchase goods; that the plaintiff's credit man inquired her name and was informed that she was the wife of the defendant; that he made an investigation as to the financial responsibility of the defendant and then sold the goods to the defendant's wife, charging them to her; that the goods were shipped, directed to the defendant's wife at the defendant's residence, and that, from time to time, she made payments by her own checks; that she was at this time receiving an allowance from the defendant for the payment of the household expenses.

*Held,* that the evidence was sufficient to raise a question of fact to be decided by the jury as to whether the credit was given to the husband or to the wife.

Appeal by the plaintiff, John Wanamaker, from a judgment of the County Court of Monroe county in favor of the defendant, entered in the office of the clerk of the county of Monroe on the 30th day of October, 1901, upon the verdict of a jury, and also from an order entered in said clerk's office on the 7th day of November, 1901, denying the plaintiff's motion for a new trial made upon the minutes.

The action was commenced in the Municipal Court of the city of Rochester, where the plaintiff obtained a verdict for the full amount demanded in the complaint. The defendant appealed to the County Court of Monroe county and demanded a new trial.

*Harry Otis Poole,* for the appellant.

*Charles Van Voorhis,* for the respondent.

Spring, J.:

This action was brought by the plaintiff, who carries on an extensive store in the city of Philadelphia, in the State of Pennsylvania, to recover for the purchase price of goods which it is claimed were sold by him to the defendant, the wife of the latter actually making the purchase.

The defendant is a member of a prominent hardware firm in the city of Rochester, and at the time the purchases were made and the credit given, was cohabiting with his wife, and they were apparently in prosperous circumstances and their conjugal relations affectionate. They had no children, but for nine years a little boy had been a

member of their family, and while not formally adopted, his clothing was provided, he lived in the family and was treated in every particular like an own son of the defendant.

The articles purchased of the plaintiff were suitable for the station in life in which the defendant and his wife moved. They consisted of towels, hose, shoes, table linen, articles for the little boy, for the wife and for general family use. The trial court in fact stated to the jury that the articles were suitable and within the ordinary definition of necessaries, but submitted to the jury as a question of fact to determine in this particular case whether they were necessaries, not because of the intrinsic character of the articles themselves, but for the reason that a suitable allowance was provided for the wife by the defendant, and that goods of like description had already been purchased of other merchants so that the family were well supplied. The court during the trial thus stated his position succinctly: " But if it appears affirmatively that the lady was abundantly supplied with similar articles purchased elsewhere, and that there was not, in fact, any reasonable necessity for such expenditure, the husband cannot be held responsible unless there is some affirmative proof of actual authority, outside of the authority the law infers from their marital relations." And this position was commented upon *in extenso* in his charge to the jury. We have, therefore, this principle enunciated : That if a wife, living with her husband, seeks to purchase goods of a merchant, the latter must make an inquisitorial examination and ascertain whether the family possess an adequate supply of the articles which the wife desires to purchase. If she wishes to buy a pair of hose, a towel, a paper of pins or a pair of shoes for the baby, it is incumbent upon the merchant to be throughly satisfied that the household needs replenishing with the articles which the faithful spouse desires. If this is the rule, the only safe course, inevitably, is for the wife to present to the merchant an inventory of the household goods, and even then he may overstep by selling one towel too many. The marital relation in this country is not so demeaning to the wife as this principle implies.

The respondent, by the fact of his marriage, makes his wife his agent for whatsoever necessaries she may purchase, unless he has expressly forbidden the merchant to sell to her upon his credit.

This rule may at times work injustice, but good policy and the preservation of the home require that the wife be given the fullest latitude in purchasing what is within the compass of her station in life, and the husband must pay therefor. The authorities. to which reference has been made controverting this position are mainly where the wife was living apart from her husband, or where he had expressly forbidden the pledging of his credit.

In our judgment there was no question of fact whether these articles were necessary, as it was conceded that they were intrinsically so, and that they were used in the family in the ordinary way so that the defendant and his family derived the benefit of their use. It seems that during this period the wife had also purchased of merchants in the city of Rochester goods which were also charged to the husband; and on account of these purchases it is claimed that the articles in controversy were not essential. If, however, the position of the defendant is tenable, then none of these purchases are chargeable to the defendant, for during this period he was furnishing his wife with an allowance for her personal expenses and those of his household. We apprehend a secret agreement between the husband and wife cannot absolve the former from liability to those who sell goods to be used in the family and suitable for its use.

With the benefits accruing to the husband from the marital relation inevitably are attached the burdens which follow in its train. Unless we are to take a step backward in our domestic and social economy by holding that a wife is no longer the partner and companion of her husband, but that she is scarcely more than a slave, we must give full force to the doctrine that the husband when living with the wife vests her with the right to purchase whatever may be necessary for the family use, and the only hazard the merchant takes is that the articles must comport with the station in life of the husband, unless the goods are sold after his express prohibition.

The trial court also submitted to the jury the question as to whom credit was given for the purchase of these goods. While the question is not entirely free from doubt, we are inclined to believe that this question was one of fact.

Mrs. Weaver called at the store of the plaintiff, stating that she desired to purchase goods. The credit man of the plaintiff inquired

her name and was informed that she was the wife of the defendant, and he examined as to the responsibility of the defendant and then sold the goods, charging them to Mrs. Weaver. The goods were shipped, directed to her at the husband's residence in Rochester, and as the account ran along from time to time she made payments by her own checks. She at this time was receiving the allowance from her husband and must have expected to pay for these goods therefrom, and we think sufficient facts are proved to make this question one of fact. (*O'Connell* v. *Shera,* 66 App. Div. 467; *Tiemeyer* v. *Turnquist,* 85 N. Y. 516.)

Whatever may have been the character of the articles, under these authorities the wife could make a contract by which she would be personally liable for the payment of these goods, and this is especially so since the passage of chapter 381 of the Laws of 1884, removing the disability of a married woman to made a contract. If credit was actually given to her instead of to the husband, then she alone is liable. Inasmuch, however, as the first question was submitted to the jury, as we deem erroneously, a reversal of the judgment becomes necessary.

The judgment should be reversed and new trial ordered, with costs to the appellant to abide the event.

WILLIAMS and HISCOCK, JJ., concurred; McLENNAN and DAVY, JJ., dissented.

DAVY, J. (dissenting):

This action was tried in the County Court of Monroe county before a jury, and a verdict was rendered in favor of the defendant. A motion for a new trial was made by the plaintiff upon all the grounds stated in section 999 of the Code of Civil Procedure, which was denied, and the plaintiff appeals to this court from both the judgment and order.

The plaintiff is a merchant residing and doing business in the city of Philadelphia.

On the 31st day of January, 1900, Mrs. Alice M. Weaver, wife of the defendant, went to Philadelphia to attend the wedding of her husband's brother, and while there she called at the store of the plaintiff, saw the assistant credit man, Mr. Alfred G. Clay, and asked permission to open an account, so that she could purchase

goods from time to time and have the same charged to her. At this interview she was questioned by Mr. Clay as to her financial responsibility, and she said that her husband was Simon J. Weaver, a member of the firm of Weaver, Palmer & Richmond, of Rochester, N. Y. Mr. Clay replied that the commercial rating of the firm was sufficient to warrant the plaintiff in opening an account and giving her the credit asked for; he gave her an identification coin to facilitate purchasing, and thereafter during her visit in Philadelphia and up to March, 1900, she purchased goods at different times of the plaintiff. Early in July she paid for all of these purchases. On the 14th day of July, 1900, she was in Philadelphia and again went to the store of the plaintiff and presented the identification coin for the purpose of purchasing more goods. She met Mr. Clay, who remembered her and said that the time had been so long since she received the coin that she had better have a new one, which was given to her. Prior to this time Mr. Clay had sent her a statement asking her to pay the previous bill. She wrote him that she was ill and could not attend to it at that time. She did pay it, however, before she purchased goods in July. When the account was again opened in her own name, she purchased goods of the plaintiff from that time until the 30th of July, 1900, amounting in all to the sum of $101.55. The bills were made out in her name and sent to her, and the whole account was paid by her, except the balance of $51.55, for which sum this action was brought.

It appears that all the payments on the account were made by her personal check. The defendant did not know of these purchases until the 8th day of May, 1901, nearly a year after the goods were sold, when he received a letter from Mr. Clay, and the bill for the balance due the plaintiff.

In April, 1900, she incurred a bill of $150.21 at Sibley, Lindsay & Curr Co.'s store, and a bill of $568 at Burke, Fitz Simons, Hone & Co.'s store in Rochester, N. Y., for goods of a similar character to those purchased of the plaintiff. She testified that she bought hosiery at Wanamaker's because they did not have in Rochester the kind she wore, yet she bought different kinds of hose at the Rochester stores, and was well supplied at the time she purchased the goods in question. She also testified that she had towels

in the house, but she bought towels of the plaintiff, because she thought they were a bargain.

The defendant's salary was $2,000 a year. Out of this amount he gave his wife $1,500 a year in monthly installments of $125 for the purpose of maintaining the household and providing herself with such things as she needed.

The court submitted these two questions to the jury : *First,* to whom was the credit given for the articles purchased by Mrs. Weaver? And *second,* were the articles purchased by her necessaries?

The court charged the jury that the presumption, in the absence of proof to the contrary, is, that Mrs. Weaver made these purchases on her husband's credit, but this presumption might be overcome by proof that the articles were not necessaries, and that Mrs. Weaver was abundantly supplied with all such necessary articles.

These questions which were controverted upon the trial were purely questions of fact and were submitted to the jury in a clear and impartial charge by the learned judge who presided, and there was ample evidence to sustain the verdict.

Schouler on Husband and Wife (§ 126) lays down the rule that " The claim for a wife's necessaries involves two elements : articles furnished must be of the suitable class, such as food, dresses, or medical attendance ; and, furthermore, of that class the wife must be destitute of such supply as befits her condition and the means and station of her husband."

At section 107, the author also says that " Not only is the husband permitted to show that articles in controversy are not such as can be considered necessaries, but he may show that he supplied his wife himself, or by other agents, or that he gave her ready money to make the purchase. This is on the principle that the husband has the right to decide from whom and from what place the necessaries shall come, and that so long as he has provided necessaries in some way, his marital obligation is discharged, whatever may be the method he chooses to adopt. Accordingly, in the class of cases which we are now considering, namely, where the spouses dwell together, so long as the husband is willing to provide necessaries at his own home, he is not liable to provide them elsewhere. In general, while the spouses live together, a husband who supplies his wife

with necessaries suitable to her position and his own, is not liable to others for debts contracted by her on such an account without his previous authority or subsequent sanction." (*Cromwell* v. *Benjamin*, 41 Barb. 558; *Bloomingdale* v. *Brinckerhoff*, 3 Misc. Rep. 49; 49 N. Y. St. Repr. 142; *McQuhae* v. *Rey*, 3 Misc. Rep. 550; 52 N. Y. St. Repr. 484; *Arnold* v. *Allen*, 9 Daly, 198; *Schwarting* v. *Bisland*, 4 Misc. Rep. 534; *Hatch* v. *Leonard*, 71 App. Div. 32.)

It will be seen from these authorities that the husband will not be liable for goods purchased by his wife without his knowledge or consent, if such goods are purchased from one with whom there have been no previous dealings by the wife on the credit of the husband, provided the husband has suitably supplied his wife with such necessaries or with the money to purchase them. A merchant, under such circumstances, supplies goods to the wife at his peril, if the husband is guilty of no neglect in furnishing necessaries. It is not enough to show simply that the merchant furnished necessaries, but it must appear that the husband, whose duty it was to provide them, had failed to discharge that duty.

The law presumes when the wife purchases necessaries for herself that she has the authority of her husband to make the purchases and to pledge his credit. It is the cohabitation and marital relation of the parties upon which the law imposes the duty of the husband to provide his wife with necessaries. His failure to perform that which the law requires of him confers upon her the authority to purchase upon his credit necessaries for herself and family.

In *Cromwell* v. *Benjamin* (*supra*) it was held that a husband is legally bound for the supply of necessaries to his wife so long as she does not violate her duty as wife, and he may discharge this obligation by supplying her with necessaries himself, or by his agents, or by giving her an adequate allowance of money, and then he is not liable to a tradesman who, without his authority, furnishes her with necessaries.

Assuming that these goods were necessaries, the question is, were they sold upon the credit of the husband or the wife? The rule is well settled that where a tradesman furnishes goods to the wife and gives her credit, upon her promise to pay for the same, the husband is not liable, even where the goods were purchased for the benefit of the whole family, including the husband. (*Tiemeyer* v. *Turn*

*quist*, 85 N. Y. 516; *Jones* v. *Fleming*, 104 id. 433; *Von Mallen* v. *Fuhrmann*, 56 Hun, 402; *Byrnes* v. *Rayner*, 84 id. 200; *O' Connell* v. *Shera*, 66 App. Div. 468; *Dickinson* v. *Ensign*, 31 N. Y. St. Repr. 651; *Hatch* v. *Leonard*, *supra*.)

Chancellor KENT lays down the rule that if a tradesman furnishes the goods to the wife and gives the credit to her, the husband is not liable, though she was at the time living with him. · (2 Kent Com. [14th ed.] 209.)

Rodgers, in his work on Domestic Relations (§ 222), lays down the following rule: " But in any case, before there can be a right of recovery, the tradesman furnishing the necessaries must sell the same to the wife with the intention of binding the husband. If he extend credit to her alone or personally, this will preclude the idea of a contract upon the faith of the liability of the husband, and he will not be bound."

By chapter 381 of the Laws of 1884 all disabilities of a married woman to make valid contracts were removed, and she became invested with all the powers of a *feme sole* to make contracts and bind herself thereby.

In *O' Connell* v. *Shera* (*supra*) the court held that while it is true that the presumption is that the husband is liable for necessaries furnished to a wife, yet the wife has a complete right to contract on her personal liability even for necessaries, and where there is a conflict of evidence as to whom the credit was given the question should be submitted to the jury.

In *Tiemeyer* v. *Turnquist* (*supra*) the wife was held liable for a purchase of groceries on her own credit, although the purchase was made for the benefit of the whole family, including the husband. Judge FINCH, in speaking for the court, says: " No law prescribes or limits the kind or character of property which she may acquire, nor does it dictate what she shall do with it when it becomes her own. If it was money or land she might consume it in the support of her family, and it is none the less her separate property because she chooses not to hold it as such, but consumes it for the benefit of others as well as herself. It is enough that it is hers; hers to keep or give away, or sell or consume in the support of her family. It may now be stated broadly as a rule, both of law and justice, that the married woman who buys property which becomes her own is

liable for the purchase price. She who buys must expect to pay."

It seems to me that if the plaintiff intended to make the defendant liable he would have communicated with him before he sold his wife the goods. If a merchant sells to a married woman a large bill of goods upon the credit of her husband, who lives several hundred miles away and is a stranger to the merchant, he ought, with common prudence, to inquire of the husband whether she has his consent for the order she has given. If the plaintiff had so inquired in this case, it is evident that the defendant would have told him not to trust his wife. But no such inquiry was made. On the contrary, it appears from the evidence that plaintiff made the contract with the defendant's wife, sold her the goods and gave her the credit. She was the person trusted, and the plaintiff cannot now shift the liability upon the husband.

I have examined the various exceptions taken to the charge and refusals to charge, and to the rulings on questions of evidence at the trial, and find none which requires a reversal of the judgment.

The judgment and order appealed from should be affirmed, with costs.

McLENNAN, J., concurred.

Judgment and order reversed and new trial ordered, with costs to the appellant to abide the event, upon questions of law only, the facts having been examined and no error found therein.